SK:MWG
F. #2020R00736

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A WHITE 2018 AUDI Q5 SPORT UTILITY VEHICLE, NEW YORK LICENSE PLATE NUMBER KED8802, VEHICLE IDENTIFICATION NUMBER WA1BNAFYXJ2003131, AND ANY CLOSED CONTAINERS AND ITEMS CONTAINED THEREIN | APPLICATION FOR A SEARCH WARRANT FOR A VEHICLE<br><br>Case No. 20-MJ-806 |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, JACKY J. HE, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of a white 2018 Audi Q5 sport utility vehicle, New York license plate number KED8802, vehicle identification number WA1BNAFYXJ2003131, and any closed containers and items contained therein (the "SUBJECT VEHICLE"), particularly described herein and in Attachment A, for the items particularly described in Attachment B.

2. I am a Special Agent with HSI and have been since 2016. Before that, I was an Officer with Immigration and Customs Enforcement, Division of Enforcement and Removal Operations, for approximately nine years. During my tenure at HSI, I have been involved in the investigation of numerous cases involving the importation and distribution of controlled substances. Through my training, education, and experience, I have become

familiar with the manner in which illegal drugs are imported and distributed, the method of payment for such drugs, and the efforts of persons involved in drug trafficking to avoid detection by law enforcement, as well as the uses and capabilities of cellular telephones. I have also participated in the execution of search warrants involving evidence of drug trafficking, including searches of vehicles.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## THE SUBJECT VEHICLE

4. The SUBJECT VEHICLE is particularly described as a white 2018 Audi Q5 sport utility vehicle, New York license plate number KED8802, vehicle identification number WA1BNAFYXJ2003131. As set forth in Attachment A, the applied-for warrant would authorize the search of the SUBJECT VEHICLE and any closed containers and items contained therein.

5. The SUBJECT VEHICLE is currently in the custody of HSI in a secure parking lot located at 75 North Hangar Road, Jamaica, New York 11430, following the arrest of its owner, XIN WANG WANG, on or about August 20, 2020, as described herein.

## PROBABLE CAUSE

6. The United States, including HSI, is conducting a criminal investigation of RONG JIN YANG, also known as "Jingsheng Huang," XIN WANG WANG, and others regarding the importation of controlled substances, including ketamine and 3,4-Methylenedioxymethamphetamine ("MDMA"), into the United States.

7. On or about August 13, 2020, HSI received a report from Customs and Border Protection ("CBP") stating that Dutch Customs officers had seized approximately 80

kilograms of ketamine from an air freight shipment shipped by Blokesch Yacht Service in the Netherlands to an address in Flushing, New York, on or about August 11, 2020.

8. On or about August 17, 2020, HSI agents and CBP officers at John F. Kennedy International Airport ("JFK") conducted a border search on a package manifested as "Hendi gas barbeque grill master maxi," with a listed weight of 640 kilograms, transported via airline freight service, and shipped from Blokesch Yacht Service in the Netherlands (the "Package") to "Jingsheng Huang, 1200 McDonald Avenue, Brooklyn, New York 11230, 646-249-3694, yrj19871207@gmail.com."

9. Upon examination, the Package contained three pallets, each containing six to seven boxes. Two boxes inside each pallet contained black plastic bags containing an off-white colored powdery substance and translucent plastic bags containing a brown substance with a rocky shape. The off-white colored substance field-tested positive for ketamine. The brown substance with a rocky shape field-tested positive for MDMA. The ketamine substance weighed approximately 112 kilograms, and the MDMA substance weighed approximately 30 kilograms.[1]

10. CBP records show that the addressee of the package, "Jingsheng Huang," had engaged Aries Global Logistics, a customs broker, to facilitate the entry of the Package into the United States. "Huang" had previously used Aries Global Logistics to enter

---

[1] As of August 2020, ketamine, a Schedule III controlled substance, retails in the New York City area for approximately $40 to $60 per gram. The estimated street value for the 112 kilograms of ketamine seized by law enforcement is between $4.48 and $6.72 million.

air freight shipments addressed to him at the same address in Brooklyn, New York—1200 McDonald Avenue, Brooklyn, New York 11230—three times in June and July 2020. Documents obtained from Aries Global Logistics also show that "Huang" used the email address yrj19871207@gmail.com to communicate with Aries concerning the importation of the Package.

11. After seizing the ketamine and MDMA, CBP entered the Package into the United States.

12. On or about August 20, 2020, the Honorable Lois Bloom signed a warrant authorizing the search of the location within the Eastern District of New York at which the Package would ultimately be opened. See 20-MJ-701. Pursuant to the warrant, HSI agents planned to make a controlled delivery of the Package by removing the controlled substances and placing a GPS tracking device and trip wire within the Package.

13. On or about August 20, 2020, a law enforcement agent called the telephone number listed on the Package and advised the individual who answered the call that the Package would be delivered later that day.

14. HSI agents traveled to 1200 McDonald Avenue, Brooklyn, New York 11230, which is the address of a storage facility, and positioned themselves to observe the controlled delivery. While waiting for the controlled delivery to take place, agents observed XIN WANG WANG seated alone in the SUBJECT VEHICLE outside the storage facility. When the truck delivering the Package arrived at the storage facility, agents observed WANG use a black cellular telephone to photograph the truck.

15. An undercover agent posing as a delivery person (the "UC") traveled in a truck carrying the Package to the storage facility. When the UC stopped the truck at the

4

storage facility, two individuals ("Individual 1" and "Individual 2") told the UC that they were there to take delivery of the Package. The UC said that he needed the addressee to sign for the Package, and Individual 1 and Individual 2 gave the UC a telephone number to call. When the UC called the number, an individual answered and said he would be there. Soon thereafter, RONG JIN YANG approached the UC and indicated to the UC that he was the addressee Jingsheng Huang. YANG told the UC, in sum and substance, "I am Jing," and signed the name Jinsheng Huang.

16. Because the Package was comprised of three pallets of boxes, the three pallets were moved one-by-one to outside of an external storage unit at the storage facility. Once the three pallets were outside of the external storage unit, YANG, Individual 1, and Individual 2 cut clear plastic wrapping around the boxes on the pallets and then moved the boxes into the external storage unit.

17. Soon after the boxes were moved into the external storage unit, law enforcement agents received an audio signal from the tripwire and movement device hidden within the Package.

18. Thereafter, law enforcement agents including myself observed YANG walking outside of the external storage unit. YANG was walking ahead of Individual 1 and Individual 2 and appeared to be walking faster than them. Based on my training and experience, I believed that YANG was trying to leave the storage facility.

19. At that point in time, law enforcement agents approached the storage facility and stopped YANG, Individual 1, and Individual 2; and other law enforcement agents approached the SUBJECT VEHICLE containing WANG.

20.     When law enforcement agents approached the SUBJECT VEHICLE containing WANG, WANG attempted to move the SUBJECT VEHICLE, but HSI vehicles had blocked the SUBJECT VEHICLE from moving.  Law enforcement agents performed an investigatory stop to determine WANG's connection to the Package.

21.     When asked what he had been doing at the location, WANG stated, in sum and substance, that: he had stopped to eat a meal and then fell asleep, and he had not been waiting for anyone at the storage facility.

22.     WANG consented to a search of the SUBJECT VEHICLE.  Upon a search of the SUBJECT VEHICLE, agents found in the rear of the vehicle approximately three grocery bags holding more than a dozen retail packages of Ziplock storage bags.  In my training and experience, controlled substances such as ketamine and MDMA are often repackaged in smaller Ziplock storage bags.

23.     When WANG consented to the search of the SUBJECT VEHICLE, he took two cellular telephones from the console.  I asked if the two cellular telephones were his, and WANG said that they were.  Thereafter, WANG consented to a search of the cellular telephones and handed them to me.  When I asked if he would unlock his cellular telephone, WANG voluntarily did so by taking one of the cellular telephones back, unlocking it, and handing it back to me.  At that point, WANG again orally consented to my search of that cellular telephone.

24.     In the Photos application of the cellular telephone, I saw a photograph of the delivery truck that had delivered the Package.

25.     In the WeChat messaging application of the same cellular telephone, I saw that the cellular telephone had texted a photograph of the delivery truck that had

delivered the Package to an unknown individual. Also, in a Chinese WeChat message conversation from August 20, 2020, the user of the cellular telephone had asked, in sum and substance, "What is the quantity?" to which an unknown individual responded, in sum and substance, that the information was "sensitive," but that it was "a lot."[2] Based on my training and experience, I understood that these messages concerned the distribution of controlled substances. After I saw the messages, I placed WANG under arrest.

26. In addition to WANG, law enforcement agents arrested YANG outside the storage facility. Incident to YANG's arrest, agents seized a set of keys to the exterior storage unit, $843.76 in United States currency, and two cellular telephones.

27. After arresting YANG, agents advised YANG of his Miranda rights in both English and Mandarin. YANG waived his rights and voluntarily spoke to law enforcement agents, including myself. YANG stated, in sum and substance, that: he was taking delivery of the Package for a friend named "Ah Fei"; he had been paid $1,000 in advance of accepting the shipment and expected to receive another $1,000 to $2,000 after accepting the shipment; the $843.76 in United States currency seized from his person had been paid to him for accepting the shipment; and he believed the Package contained "K Powder," which he acknowledged is a street name for ketamine.

28. YANG also stated, in sum and substance, that: he had previously taken delivery of packages for "Ah Fei" on two other occasions, for which he had been paid

---

[2] I am a certified Chinese (Mandarin and Cantonese) translator. Messages originally in Chinese have been translated to English; these are draft and summary translations and are subject to revision.

approximately $1,000 to $2,000 each time; and he had contacted WANG by phone calls and WeChat messages to ask WANG to pick him up at the above-described storage facility.

        29.       Based on my training and experience, I have learned the following:

        a.       Drug traffickers often maintain on hand, and therefore transport in their vehicles, large amounts of U.S. currency in order to maintain and finance their narcotics trafficking.

        b.       Individuals who engage in drug trafficking often maintain or transport books, records, receipts, notes, ledgers, airline tickets, money orders, passports, and other papers relating to the procurement, distribution, storage, and transportation of controlled substances in vehicles.  These records can include the telephone numbers of customers and sources and the amount of controlled substances distributed to various customers, along with running totals of debts owed by those customers.  Such individuals also maintain paraphernalia utilized to cut and package controlled substances in locations to which drug traffickers have frequent and ready access, i.e., vehicles.  Based on my training and experience I know that it is common for drug traffickers to maintain these records for significant periods of time, to include several years, for the purpose of knowing what debts are owed to them or what debts they may owe.

        c.       It is common for drug traffickers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their vehicles for ready access and to conceal them from law enforcement authorities.  Such contraband and proceeds often includes caches of controlled substances, significant amounts of currency, financial instruments, precious metals, jewelry, automobile titles, and other items of value and/or proceeds of drug sales, and evidence of financial transactions,

8

including evidence of spending large sums of cash acquired from engaging in drug trafficking activities.

    d. Individuals who engage in drug trafficking often maintain or transport contact information of their criminal associates or co-conspirators in their vehicles.

    e. Individuals who engage in drug trafficking often maintain or transport in their vehicles logs, ledgers, receipts, telephone numbers, ATM receipts, travel records, telephone numbers, caches of controlled substances, substances commonly utilized to mix or dilute controlled substances, money derived from drug sales, telephones utilized to facilitate drug trafficking, and other documents related to their drug trafficking activities, in order to have those items in locations in which the drug trafficker has immediate access.

    30. Based on the foregoing, I respectfully submit that there is probable cause to believe that the SUBJECT VEHICLE contains evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 952, 960 and 963 (conspiracy to import controlled substances) and 841 and 846 (distribution and possession with intent to distribute controlled substances, and conspiracy and attempt to do the same).

    31. Following WANG's arrest, HSI agents seized the SUBJECT VEHICLE and moved it a secure parking lot located at 75 North Hangar Road, Jamaica, New York 11430. In my training and experience, I know that the SUBJECT VEHICLE has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT VEHICLE first came into the possession of HSI.

    32. On or about September 1, 2020, a grand jury returned an indictment charging YANG and WANG with one count of conspiracy to import ketamine and MDMA

into the United States, in violation of Title 21, United States Code, Section 963; one count of conspiracy to distribute and possess with intent to distribute ketamine and MDMA, in violation of Title 21, United States Code, Section 846; and one count of attempt to possess with the intent to distribute ketamine and MDMA, in violation of Title 21, United States Code, Section 846.  See 20-CR-339 (KAM).

        33.     Given that WANG provided consent for law enforcement to search the SUBJECT VEHICLE, a search warrant may not be legally necessary to search the SUBJECT VEHICLE.  Nevertheless, I hereby submit this warrant application out of an abundance of caution.

## CONCLUSION

34. Based on the foregoing, I respectfully request that the Court issue the proposed search warrant pursuant to Federal Rule of Criminal Procedure 41.

35. Because the SUBJECT VEHICLE is already in the custody of HSI, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

JACKY J. HE
Special Agent, Department of Homeland
Security, Homeland Security Investigations

Subscribed and sworn to before me by telephone
on September 14, 2020:

THE HONORABLE RAMON E. REYES, JR.
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

# ATTACHMENT A

### Property To Be Searched

The property to be searched is a white 2018 Audi Q5 sport utility vehicle, New York license plate number KED8802, vehicle identification number WA1BNAFYXJ2003131, and any closed containers and items contained therein (the "SUBJECT VEHICLE"). The SUBJECT VEHICLE is currently in the custody of HSI in a secure parking lot located at 75 North Hangar Road, Jamaica, New York 11430.

## ATTACHMENT B

### Particular Things To Be Seized

1. All evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 952, 960 and 963 (conspiracy to import controlled substances) and §§ 841 and 846 (distribution and possession with intent to distribute controlled substances, and conspiracy and attempt to do the same) by RONG JIN YANG, also known as "Jingsheng Huang," XIN WANG WANG, and any co-conspirators from June 1, 2020 to the present, including:

   a. Evidence concerning occupancy or ownership of the SUBJECT VEHICLE, including without limitation, bills, mail envelopes, addressed correspondence, diaries, statements, identification documents, address books and telephone directories;

   b. Books records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchase, and distribution of narcotics or controlled substances;

   c. Any controlled substances or items used to package controlled substances;

   d. Proceeds of drug trafficking, including United States currency, precious metals, jewelry and financial instruments, including certificates of deposit and stocks and bonds;

   e. Any safes, key-lock strong boxes, suitcases, containers, traps, and other boxes or instruments secured by combination and/or key locks of various kinds that may contain items described in this Attachment.